The STATE of Ohio, Appellee,

v.

HUNTER, Appellant.

[Cite as *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 02CA0012.

Decided Dec. 31, 2002.

Christine C. Williams and Lawrence E. Chapanar, Wayne County Assistant Prosecuting Attorneys, for appellee.

J. Matthew Lanier, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant-appellant, Cleon J. Hunter, has appealed a decision of the Wayne County Municipal Court that found him guilty of driving under suspension, operating a vehicle without a license, and falsification. This court affirms.

I

{¶ 2} On November 30, 2001, at approximately 2:00 a.m., appellant was driving along Canal Road in the Township of Wooster, when he was stopped by Trooper Barry Thompson. Trooper Thompson explained that he stopped appellant because appellant's exhaust system was causing the vehicle to make a loud noise. When asked for his identification, appellant informed Trooper Thompson that his name was "Darrel L. Hunter" and that he was born on September 15, 1966. A LEADS check revealed a warrant for "Darrel L. Hunter" issued by the Wooster Police Department. The Wooster police arrived at the scene, arrested appellant, and took him to jail still under the mistaken belief that appellant was "Darrel L. Hunter." After arriving at the jail, appellant revealed his true identity and the police learned that appellant was under a Financial Responsibility Act suspension from January 5, 1999, to January 5, 2004. The police also learned that appellant's driver's license was expired. Appellant was then charged with driving without an operator's license, a violation of R.C. 4507.02(A)(1); driving under suspension, a violation of R.C. 4507.02(B)(1); and falsification, a violation of R.C. 4513.361. Appellant entered a plea of not guilty to the charges and filed a motion to suppress, challenging the basis for the initial traffic stop.

{¶ 3} On January 18, 2002, the Wayne County Municipal Court held an oral hearing on appellant's motion to suppress. The court denied the motion, and appellant subsequently entered a plea of no contest to the charges. The trial court accepted appellant's no contest pleas and sentenced him to six months in jail, a one-year license suspension, and a fine of $1,000 for driving under suspension; 90 days in jail and a fine of $500 for falsification; and six points on his license. The jail terms were to be served consecutively. Appellant has timely appealed, asserting two assignments of error.

II

Assignment of Error Number One

{¶ 4} "The trial court erred to the substantial prejudice of [appellant] in failing to disqualify himself in the proceeding."

{¶ 5} In appellant's first assignment of error, he has argued that the trial judge should have disqualified himself from appellant's case because the trial

judge had a personal bias and prejudice against appellant from past encounters. We disagree.

{¶ 6} This court presumes that bias or prejudice on the part of the trial judge does not exist. See *Okocha v. Fehrenbacher* (1995), 101 Ohio App.3d 309, 322, 655 N.E.2d 744. In order to overcome this general presumption of integrity, a party must set forth evidence sufficient to demonstrate a trial judge's partiality. Id. If a party shows, however, that the trial judge exhibited bias or prejudice during a proceeding, then the trial judge must disqualify himself from the proceeding. See Canon 3(E)(1) of the Code of Judicial Conduct.[1] Furthermore, disagreement or dissatisfaction with a trial judge's opinions of law does not constitute bias or prejudice that mandates a judge's disqualification. See *In re Disqualification of Murphy* (1988), 36 Ohio St.3d 605, 522 N.E.2d 459.

{¶ 7} If a municipal court judge does not voluntarily recuse himself pursuant to Canon 3(E)(1) of the Code of Judicial Conduct, then either party may attempt to have a common pleas judge decide whether or not the municipal court judge should be disqualified. See R.C. 2701.031. In order to disqualify a municipal court judge, a party must comply with procedures as set forth in R.C. 2701.031, which provides:

{¶ 8} "(A) If a judge of a municipal or county court allegedly * * * has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the court in which the proceeding is pending.

{¶ 9} "(B) An affidavit of disqualification shall be filed under this section with the clerk of the court in which the proceeding is pending not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled and shall include all of the following:

{¶ 10} "(1) The specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations;

{¶ 11} "(2) The jurat of a notary public or another person authorized to administer oaths or affirmations;

---

1. {¶ a} This section provides:
   {¶ b} "(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
   {¶ c} "(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"

{¶ 12} "(3) A certificate indicating that a copy of the affidavit has been served on the judge of the municipal or county court against whom the affidavit is filed and on all other parties or their counsel;

{¶ 13} "(4) The date of the next scheduled hearing in the proceeding or, if there is no hearing scheduled, a statement that there is no hearing scheduled.

{¶ 14} "(C)(1) Except as provided in [R.C. 2701.031(C)(2)], when an affidavit of disqualification is presented to the clerk of a municipal or county court for filing under [R.C. 2701.031(B) ], the clerk shall enter the fact of the filing on the docket in that proceeding and shall provide notice of the filing of the affidavit to one of the following:

{¶ 15} "(a) The presiding judge of the court of common pleas of the county;

{¶ 16} "(b) If there is no presiding judge of the court of common pleas of the county, a judge of the court of common pleas of the county."

{¶ 17} "R.C. 2701.031 * * * provides the exclusive means by which a litigant may claim that a municipal court judge is biased and prejudiced." *Walker v. J.W. Automotive* (June 29, 2001), 2d Dist. No. 18683, 2001 WL 726803; see, also, *Dale & Madeline Bennington Creative Investors v. Robinson* (Feb. 7, 2000), 5th Dist. No. 1999CA00212, 2000 WL 222156, appeal not allowed (2000), 88 Ohio St.3d 1515, 728 N.E.2d 403.

{¶ 18} Pursuant to R.C. 2701.031(E) the presiding judge or a judge of the common pleas court has the authority to determine disqualification issues regarding judges of inferior courts. This court, however, has no authority to render a decision with regard to disqualification, *Nicolaci v. Littlejohn* (1989), 55 Ohio App.3d 147, 148, 563 N.E.2d 368,[2] or to void a trial court's judgment on the basis of personal bias or prejudice on the part of the trial judge, *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 441–442, 8 O.O.3d 438, 377 N.E.2d 775 (holding that the court of appeals was without authority to pass upon disqualification or to void the judgment of the trial court even if the judgment was erroneous); see, also, *State v. Greer* (Oct. 28, 1992), 9th Dist. No. 15217, at 18–19, 1992 WL 316350; *Holloway v. Holloway Sportswear, Inc.*, 3d Dist. Nos. 17–98–20 and 17–2000–18, at 8–9, 2001 WL 633792, appeal not allowed (2001), 93 Ohio St.3d 1451, 756 N.E.2d 115.

{¶ 19} In the instant case, appellant has contended that the trial judge showed bias and prejudice against appellant when, at the conclusion of the hearing on the motion to suppress, the trial judge told appellant that "you're not any more credible now than you were ten years ago." We decline to discuss,

---

2. In *Nicolaci*, the procedure for disqualifying a municipal court judge was found in R.C. 2937.20, which was amended and recodified as R.C. 2701.031, effective November 20, 1996.

however, whether such a statement does indeed express bias or prejudice on the part of the trial judge. Appellant failed to make an objection to the trial court, nor did he file an affidavit of disqualification pursuant to R.C. 2701.031.

{¶ 20} Although appellant may have been unaware that the trial judge had an alleged personal bias or prejudice against him prior to the hearing on the motion to suppress, he was most certainly aware of any prejudice on the part of the trial judge after the hearing concluded. Appellant should have immediately filed an affidavit of disqualification after the suppression hearing.

{¶ 21} Because appellant failed to file an affidavit of disqualification and follow the procedures pursuant to R.C. 2701.031, he has waived the issue on appeal. *Sedlacko v. McCoy* (Feb. 25, 1999), 7th Dist. No. 96 CA 210, at * 6, 1999 WL 126925. And even if we assume that appellant somehow preserved this issue for review, this court would still refrain from determining whether the trial judge should have disqualified himself from the proceeding. As previously stated, an appellate court has no jurisdiction to vacate the trial court's judgment on an appellant's claim of judicial bias. *Beer*, 54 Ohio St.2d at 441–442, 8 O.O.3d 438, 377 N.E.2d 775; see, also, *Nicolaci*, 55 Ohio App.3d at 148, 563 N.E.2d 368; *State v. Ramos* (1993), 88 Ohio App.3d 394, 398, 623 N.E.2d 1336; *Kettering v. Berger* (1982), 4 Ohio App.3d 254, 255, 4 OBR 471, 448 N.E.2d 458; *Sims v. Sims* (Jan. 13, 2000), 8th Dist. No. 74425, 2000 WL 23184; *Walker*, supra. Accordingly, appellant's first assignment of error is without merit.

### Assignment of Error Number Two

{¶ 22} "The trial court erred in denying [appellant's] motion to suppress because the trooper had no reasonable suspicion to initiate the traffic stop."

{¶ 23} In appellant's second assignment of error, he has argued that the trial court erred by denying his motion to suppress. Specifically, appellant has argued that Trooper Thompson had no reasonable suspicion to believe that appellant was engaged in criminal activity or committing a traffic offense when he stopped appellant. We disagree.

{¶ 24} An appellate court's review of a trial court's ruling on a motion to suppress presents both questions of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In a hearing on a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to weigh the credibility of the witnesses. *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, appeal not allowed (1996), 77 Ohio St.3d 1488, 673 N.E.2d 146. Thus, an appellate court's review of the trial court's findings of fact looks only for clear error, giving due deference as to the inferences drawn from the facts by the trial court. *State v. Russell* (1998), 127 Ohio App.3d 414, 416, 713

N.E.2d 56, citing *Ornelas v. United States* (1996), 517 U.S. 690, 698–699, 116 S.Ct. 1657, 134 L.Ed.2d 911. Therefore, we are bound to accept the trial court's findings of fact if they are supported by some competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed *de novo.*" *Russell,* 127 Ohio App.3d at 416, 713 N.E.2d 56.

{¶ 25} In the instant matter, three witnesses testified at the suppression hearing: Trooper Thompson, John Fink, and appellant. Trooper Thompson testified that he stopped appellant's vehicle because of excessive noise coming from the exhaust system. Trooper Thompson stated that he initially heard the noise coming from appellant's car when appellant was approximately 20 or 25 feet away from his cruiser. Trooper Thompson explained that the noise coming from appellant's car was "kind of a more loud rumble, not only rumble cause the Honda's don't have a real [d]eep noise to them it's a smaller engine[.]" Trooper Thompson further explained that when he heard the noise he thought:

{¶ 26} "Just basically at that time of the year the winter time when you're most time going to have your windows up, if you have an exhaust leak the exhaust isn't getting past your vehicle if you have any holes in your floorboard you're going to get exhaust fumes up in your car have carbon monoxide in there."

{¶ 27} John Fink, appellant's auto mechanic, testified that he checked appellant's vehicle on two separate occasions. On October 6, 2001, Fink put a muffler on appellant's car. Fink stated that after placing the muffler on the car, he started the car up and it was a "quiet car," and that there were no problems with the operation of the vehicle's exhaust system at that time. On January 5, 2002, several months after appellant was arrested for the underlying crimes in the case sub judice, Fink inspected appellant's car. After inspecting the vehicle, Fink determined that the vehicle was "in good working order," and the muffler that he initially put on the vehicle in October 2001 was still working properly. Appellant also testified that his vehicle was not making any loud noises on the night he was pulled over by Trooper Thompson.

{¶ 28} Although the testimony of Fink and Trooper Thompson posed a potential conflict, the trial court found the testimony of both witnesses to be credible, and stated: "Even if Thompson was mistaken [about the loud noise coming from appellant's car], this court believes that he made this stop based upon hearing what he believed to be an exhaust leak." As some competent, credible evidence supports the trial court's factual findings, this court will not disturb those findings; thus, we need only determine whether those facts meet the applicable legal standard. See *Guysinger,* 86 Ohio App.3d at 594, 621 N.E.2d 726.

{¶ 29} The Fourth Amendment to the United States Constitution provides:

{¶ 30} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶ 31} Where an officer has observed a traffic violation, a stop is constitutionally valid. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091. In addition, under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, a police officer is justified in conducting a brief investigative stop of an individual if he has a reasonable and articulable suspicion that the individual is or has been engaged in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, certiorari denied (1991), 501 U.S. 1220, 111 S.Ct. 2833, 115 L.Ed.2d 1002. "Reasonable suspicion" is more than an ill-defined hunch; it must be based upon a "particularized and objective basis for suspecting the particular person * * * of criminal activity." *United States v. Cortez* (1981), 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621.

{¶ 32} Furthermore, the reasonableness of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252. If a stop is determined to be in violation of an individual's constitutional right against unreasonable searches and seizures, then the evidence obtained as a result of the stop will be suppressed as fruit of the illegal search. See *Terry*, 392 U.S. at 29, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 33} Notwithstanding the Supreme Court's holding in *Terry*, an officer does not always need a reasonable suspicion, based on specific and articulable facts, to specifically conclude that an individual is engaged in criminal activity in order to conduct an investigatory stop. In other words, "nothing in the Fourth Amendment requires that the 'specific and articulable facts' relate to suspected criminal activity." *State v. Norman* (1999), 136 Ohio App.3d 46, 53, 735 N.E.2d 953. The court in *Norman* further explained:

{¶ 34} "Were we to insist that every investigative stop be founded on such suspicion, we would be overlooking the police officer's legitimate role as a public servant designed to assist those in distress and to maintain and foster public safety. That is, law enforcement officers may legitimately approach persons and vehicles for purposes other than criminal investigation."

{¶ 35} In *Norman*, the appellate court affirmed the trial court's decision which denied a defendant's motion to suppress. The defendant in *Norman* argued essentially the same issue as appellant does in the instant matter: his arrest was the result of an illegal search and seizure on the part of the state of Ohio and the trial court erred by denying his motion to suppress.

{¶ 36} During the defendant's suppression hearing in *Norman*, the arresting officer testified that she noticed that the defendant's vehicle was stopped at a stop sign for an extended period of time; it was approximately 2:43 a.m. when the officer noticed the defendant's vehicle. After passing the defendant's stopped vehicle, and returning minutes later to see the vehicle still sitting stationary at the stop sign, the arresting officer activated her overhead lights and pulled alongside the vehicle to ask the defendant why he was waiting at the stop sign. When asked why the arresting officer approached the vehicle, the officer testified that "she was concerned for the safety of other motorists as well as the passengers of the stationary vehicle." *Norman*, 136 Ohio App.3d at 49, 735 N.E.2d 953. The arresting officer also stated that she did not believe that the defendant was or had been engaged in criminal activity when she stopped him. Id. at 50, 735 N.E.2d 953.

{¶ 37} In holding that an officer may stop an individual based on reasonable suspicion that the individual's safety is at issue, the *Norman* court stated:

{¶ 38} "Police officers without reasonable suspicion of criminal activity are allowed to intrude on a person's privacy to carry out 'community caretaking functions' to enhance public safety. The key to such permissible police action is the reasonableness required by the Fourth Amendment. When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base her safety concerns." Id.

{¶ 39} In the case sub judice, Trooper Thompson claimed he was worried about appellant's safety because carbon monoxide from a faulty exhaust pipe could leak into appellant's vehicle, which could pose a serious threat to appellant's health and safety. During the hearing, Fink also implied that it was reasonable to worry over the safety of an improperly functioning exhaust system. When asked whether maintaining a satisfactory muffler and exhaust system should be a safety concern in the winter, Fink responded: "In the winter, yes, or any time for that fact."

{¶ 40} It is immaterial that Trooper Thompson was not focusing on potential criminal activity when he stopped appellant because "[l]aw enforcement officers may legitimately stop cars for purposes other than criminal investigation." *State v. Thayer* (Aug. 31, 1990), 2d Dist. No. 2667, 1990 WL 125704; see, also, *Norman*, 136 Ohio App.3d at 54, 735 N.E.2d 953 ("under appropriate circumstances a law enforcement officer may be justified in approaching a vehicle

to provide assistance, without needing any reasonable basis to suspect criminal activity"). Moreover, the United States Supreme Court has recognized the legitimacy of such stops, stating:

{¶ 41} "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. *Local police officers * * * frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.*" (Emphasis added.) *Cady v. Dombrowski* (1973), 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706.

{¶ 42} We conclude that, in light of the surrounding circumstances, Trooper Thompson's reasons for stopping appellant's vehicle were sufficient to justify the stop. Trooper Thompson testified that because the winter weather forced drivers to keep their windows up, he feared that appellant might be in danger from the noxious gases that were emitted as a result of the potentially faulty exhaust system. It is clear that Trooper Thompson had specific and articulable facts sufficient to support his concern for appellant's safety. Furthermore, a law enforcement officer in Trooper Thompson's position would reasonably have had the same concerns for the safety of any driver upon hearing the driver's car making a noise similar to the sounds Trooper Thompson heard coming from appellant's vehicle.

{¶ 43} Even though we affirm the trial court's decision on the ground that a law enforcement officer may legitimately stop a vehicle if the officer has reasonable suspicion to conclude that an individual's safety is at risk, we are still mindful of the dangers expressed in *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

{¶ 44} The Supreme Court in *Prouse* was faced with determining:

{¶ 45} "[W]hether it is an unreasonable seizure under the Fourth Amendment and Fourteenth Amendments to stop an automobile * * * for the purpose of checking the driving license of the operator and the registration of the car, where there is neither probable cause to believe nor reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles or that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable law." Id. at 650, 99 S.Ct. 1391, 59 L.Ed.2d 660.

{¶ 46} The Supreme Court found that the spot license stops were extremely discretionary because there were no set guidelines for determining who should be stopped. Such discretionary stops, as the Supreme Court noted, were not justified by their marginal contributions to highway safety in light of other less intrusive means available to the state in regulating the highways. Id. at 660, 99 S.Ct. 1391, 59 L.Ed.2d 660. The *Prouse* court further noted: "To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion 'would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches * * *.' " Id. at 661, 99 S.Ct. 1391, 59 L.Ed.2d 660, quoting *Terry*, 392 U.S. at 22, 88 S.Ct. 1868, 20 L.Ed.2d 889. On this basis, the Supreme Court held:

{¶ 47} "[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." *Prouse*, 440 U.S. at 663, 99 S.Ct. 1391, 59 L.Ed.2d 660.

{¶ 48} The problems inherent in the random spot license and registration stops in *Prouse* are not present in the case at bar. The same reasonableness standard that is applied when an officer stops a vehicle because he believes the driver was engaged in criminal activity also applies to an officer who stops a vehicle for safety reasons. A law enforcement officer who stops a citizen in the belief that the driver's safety is at risk must still have a reasonable suspicion, based upon specific and articulable facts, to have such concerns. A stop by an officer who lacks a reasonable suspicion to conclude that the driver's safety is in danger is in violation of the driver's constitutional rights.

{¶ 49} In continuing to apply the reasonableness standard to safety stops, this court upholds the essential purpose of the proscriptions in the Fourth Amendment, which were intended " ' "to safeguard the privacy and security of individuals against arbitrary invasions." ' " *Prouse*, 440 U.S. at 653–654, 99 S.Ct. 1391, 59 L.Ed.2d 660, quoting *Camara v. San Francisco Mun. Court* (1967), 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930.

{¶ 50} On another matter, we address the trial court's reasoning for denying appellant's motion to suppress. We are not oblivious to the fact that the trial court denied appellant's motion to suppress on a different ground. The trial court's journal entry stated: "The court finds that the arresting officer has articulated sufficient facts to establish a reasonable suspicion that [appellant] was

violating R.C. 4513.22. The stop of [appellant's] vehicle was, therefore, justified." Although we affirm the trial court's decision, we do so without concluding that Trooper Thompson stopped appellant based on the belief that appellant was violating R.C. 4513.22. The record clearly indicates that Trooper Thompson did not stop appellant because he believed appellant was engaged in possible criminal activity or violating any traffic laws. Rather, Trooper Thompson stopped appellant because he was concerned for appellant's safety. A trial judge cannot "listen to the testimony of [an] officer, and then attempt to justify the stop on a basis which was not articulated by the officer." *State v. Cockrell* (July 25, 1994), 4th Dist. No. 93CA1957, 1994 WL 390360. Therefore, we reject the trial court's conclusion that the stop was constitutional based on a perceived violation of Ohio traffic laws.

{¶ 51} Although the reasoning behind the trial court's decision was erroneous, we will not reverse its decision. A reviewing court is not authorized to reverse a correct judgment simply because the trial court has stated an erroneous basis for that judgment. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742. Therefore, we find that appellant's second assignment of error is without merit.

### III

{¶ 52} Appellant's assignments of error are overruled. The decision of the trial court is affirmed.

Judgment affirmed.

BAIRD, P.J., and BATCHELDER, J., concur.