{¶ 18} I respectfully concur in judgment only with the following observations.
 {¶ 19} The majority correctly indicates that "a cellular phone tip made by a citizen informant reporting erratic driving to the police is reliable if the stop is challenged and the state is able to show the factual basis for the stop." State v. Livengood, 11th Dist. No. 2002-L-044, 2003-Ohio-1208, at ¶ 9. While I agree that this is the law in Ohio, it is inapplicable to the case currently before the court.
 {¶ 20} In Livengood, the citizen informant testified during the suppression hearing. Here, neither the citizen informant nor the dispatcher testified. The police officers who did testify, clearly had no personal knowledge as to what the informant said. Appellant however failed to object when the officers testified as to the content of the dispatch. Nevertheless, even without an objection, the consideration of such testimony by the court would be a clear abuse of discretion as it constituted double hearsay. State v. Swick (Dec. 21, 2001), 97-L-254, 2001 WL 1647220, at 4 (holding that "evidentiary rulings are within the broad discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of that discretion").
 {¶ 21} With a total absence of evidence concerning the reliability of the "tip," the trial court would have abused its discretion if it had relied upon this evidence in reaching its decision. I, therefore, strongly disagree with the majority that consideration of double hearsay would somehow not be an abuse of discretion. Presumably, the trial court did not rely on such inherently unreliable testimony. Thus, this court, on appeal, should be obligated to determine if sufficient additional evidence existed to support the trial court's finding of guilt.
 {¶ 22} Fortunately, there was no need for the trial court to rely on the double hearsay citizen informant's information as this was not a traffic stop. There is considerable case law in this state holding that when a vehicle is parked or stopped in a public place, such as a parking lot, a police officer, under the appropriate circumstances, can approach the stationary vehicle and engage its occupants in conversation without having to first satisfy the general prerequisites for an investigative stop. State v. Santiago, 11th Dist. No. 2000-L-168, 2002-Ohio-1469, 2002 Ohio App. LEXIS 1488, at 4; State v. Barno, 11th Dist. No. 2000-P-0100,2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at 3. In fact, the majority of case law concerning investigative stops focuses almost entirely on a moving vehicle that is stopped by a police officer, who must then establish the criteria justifying the stop.
 {¶ 23} Even a Terry stop focuses on the detainment of a person, for example, walking on a sidewalk, and not on a person who is already immobile. See, e.g., Mentor v. Krejsa (Dec. 20, 2002), 11th Dist. No. 2001-L-188, 2002 WL 31862680; State v. Brown (Dec. 13, 2002), 11th Dist. No. 2001-L-168, 2002 WL 31812935. When the safety and well being of an individual is an immediate and obvious concern, police officers clearly have a duty to investigate. Fourth Amendment considerations are only triggered when criminal activity is suspected, not when urgent personal safety issues exist. State v. Hunter, 151 Ohio App.3d 276,2002-Ohio-7326, at ¶¶ 33-34.
 {¶ 24} Regardless of the reason or motive that Deputy Carr may have had for originally seeking out appellant's vehicle, his testimony indicated that prior to approaching the car, he noticed the engine was running, the headlights were on, and that the driver was slumped over the steering wheel. These observations satisfied any constitutional issue as to his ability to approach the car and assess the situation. State v.Evans (1998), 127 Ohio App.3d 56; State v. Boys (1998),128 Ohio App.3d 640.
 {¶ 25} Accordingly, I believe that the majority's reliance on the double hearsay account of the citizen informant's tip is not only unnecessary, but also incorrect. Notwithstanding the original motivation of the investigating officer, he had ample cause to approach and investigate a visibly incapacitated individual, whose personal well being was clearly and immediately at issue. Under these facts, the officer's intervention was reasonable and withstands Fourth Amendment scrutiny.
 {¶ 26} That being said, I am far more concerned with the paucity of evidence presented by the state. The trial court's denial of appellant's motion to acquit after the state completed its case had to have rested on a single, unchallenged statement from one of the arresting officers: "He did have pills. He told us afterwards that he had been taking them, and that he was on a prescription from his doctor." Other than appellant's apparent physical condition, there was no other evidence that appellant had been abusing an illicit drug, or that he had abused his prescribed medication.
 {¶ 27} Fortunately for the state, any prescription medication can be considered a dangerous drug. R.C. 4729.01(F)(1)(a) ("dangerous drugs" include any drug that must have a restrictive statement providing that the drug may be dispensed only upon a prescription). Moreover, once appellant testified, it was his own testimony that provided evidence of the nature and effect of the various drugs ingested. Therefore, the argument that the verdict was against the manifest weight of the evidence fails.
 {¶ 28} For these reasons, I respectfully concur in judgment only.