[Cite as *State v. Weaver*, 2021-Ohio-1025.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| EMILE WEAVER | : | Case No. CT2019-0034 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. CR2015-0216

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     March 29, 2021

APPEARANCES:

For Plaintiff-Appellee

TAYLOR BENNINGTON
27 North Fifth Street
P.O. Box 189
Zanesville, OH 43701

For Defendant-Appellant

RACHEL TROUTMAN
BETHANY O'NEILL
MICHELLE UMAÑA
PETER GALYARDT
250 East Broad Suite, Suite 1400

Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Emile L. Weaver appeals the April 11, 2019 judgment entered by the Muskingum County Common Pleas Court dismissing her petition for postconviction relief following a hearing. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   This matter comes before us for the third time. A full recitation of the underlying facts may be found in our prior consideration of this matter. *State v. Weaver*, 5th Dist. Muskingum No. CT2016-33, 2017-Ohio-4374 (*Weaver I*) and *State v. Weaver*, 5th Dist. No. CT2017-75, 2018-Ohio-2509 (*Weaver II*). We therefore abbreviate our statement of facts in the present matter.

{¶ 3}   On July 22, 2015, in connection with the death of her newborn by asphyxiation, the Muskingum County Grand Jury returned an indictment charging Appellant with one count of aggravated murder, one count of gross abuse of a corpse, and two counts of tampering with evidence. The case proceeded to a jury trial commencing on May 10, 2016 and Appellant was found guilty on all counts.

{¶ 4}   At sentencing, the trial court merged the two tampering-with-evidence counts and imposed a one-year prison sentence on said offense. The trial court further imposed a three-year prison sentence for gross abuse of a corpse. It ordered these sentences to run consecutively to each other and to the sentence for aggravated murder. Finally, the trial court imposed life in prison without parole for the offense of aggravated murder. In support of its sentencing decision, the trial court concluded appellant was not

remorseful, she had committed "the worst form of the offense," and she had caused emotional hardship to her sorority sisters.

{¶ 5} Appellant filed her first appeal to this Court raising four assignments of error, specifically 1) the trial court erred in imposing a sentence of life imprisonment without the possibility of parole; 2) the sentence is disproportionate to her conduct; 3) the court erred in imposing consecutive sentences; and 4) the conviction of gross abuse of a corpse was not supported by sufficient evidence. We found we were without statutory authority to review the sentence for aggravated murder, and therefore overruled Appellant's first two assignments of error on the basis of lack of appellate jurisdiction. *State v. Weaver*, 5th Dist. Muskingum, 2017-Ohio-4374, 93 N.E.3d 178. We overruled her remaining assignments of error on the merits and affirmed the judgment of the trial court.

{¶ 6} Appellant filed a postconviction petition on August 25, 2017, an amended petition on September 5, 2017, and a second-amended petition on September 6, 2017. The State filed its response on September 18, 2017.

{¶ 7} In her petition, Appellant alleged counsel was ineffective for failing to present evidence concerning neonaticide in mitigation of sentence. She attached to her petition an affidavit of Dr. Clara Lewis, and an article by Michelle Oberman discussing neonaticide, including sentencing data. In her affidavit, Dr. Lewis, who is a professor at Stanford University, stated she read the transcript and docket from Appellant's trial. She also reviewed news media coverage of the case and social media posts available from Appellant and her friends. In addition, she conducted a personal interview with Appellant on August 23, 2017. The affidavit stated in her expert opinion, Appellant's case is a typical

example of contemporary neonaticide, her sentence is disproportionately harsh when compared to sentences given to others convicted of the crime, and the defense failed to introduce relevant information about the social and cultural causes of neonaticide, which would have provided context for understanding the crime and established mitigation. In her affidavit and her attached report, Dr. Lewis explained how immaturity, social isolation, the insistence of her ex-boyfriend on secrecy during the pregnancy and the actions of her sorority sisters reinforcing her denial of the pregnancy caused Appellant to shut down and become deeply fearful. Dr. Lewis also noted in her affidavit:

> Birth takes hours. It is a painful and noisy process. Doing it alone, in silence, in a shared bathroom speaks to Emile's abject terror, as well as to her belief that she had no one she could trust. Anyone might have averted this outcome by offering to help. Instead, she was left alone. Lewis affidavit, ¶ 15.

{¶ 8}  In the report attached to her affidavit, Lewis further explained while many find it impossible to understand how and why a woman can commit the act of infanticide, psychiatrists explain there's a profile: "Women who commit neonaticide tend to be immature, isolated, worried about the judgment of others on issues ranging from sex to abortion to unwed motherhood." Research reveals women who commit neonaticide, including Appellant, receive no prenatal care, suffer from pregnancy denial, make no plans for their labor or delivery, and labor alone on toilets without medical care. When the

baby arrives denial shatters and panic ensues. The crimes are not carefully planned, but rather are "poorly concealed acts of desperation."

{¶ 9}   Dr. Lewis expressed the loss of the newborn's life is a tragedy for which Appellant deserved to be punished, but in her expert opinion, had the existing body of research on neonaticide been brought to bear on Appellant's sentence, it would have demonstrated substantial grounds to mitigate her individual culpability.

{¶ 10}  The trial court dismissed the petition without a hearing. The court found Appellant's argument of ineffective assistance was barred by res judicata, as it could have been raised on direct appeal. The court further noted prior to trial Appellant was found competent to stand trial, and sane at the time she committed the offense.

{¶ 11} Appellant appealed and this court found the matter was not barred:

> The affidavit and report of Dr. Clara Lewis submitted with Appellant's petition for postconviction relief explained the psychiatric and cultural issues surrounding neonaticide far beyond counsel's casual mention at the sentencing hearing, and provided information to contextualize the same actions which the court used to support the sentence of life without possibility of parole. The evidence is directly in contravention of the arguments of the State accepted by the judge in imposing the harshest sentence available for the offense. We find the evidence submitted with Appellant's petition meets the threshold level of cogency to defeat a claim of res judicata. *Weaver II*, supra at ¶ 31

{¶ 12} We therefore remanded the matter to the trial court with instructions to conduct an evidentiary hearing on Appellant's motion for postconviction relief. *Weaver II*, supra at ¶ 33.

{¶ 13} The hearing took place over the course of two days beginning on April 2, 2019. Dr. Lewis did not testify. Instead, on the first day of the hearing, Dr. Diana Lynn Barnes, a psychotherapist specializing in women's reproductive health, including perinatal mood and anxiety disorders, testified on behalf of Appellant. Dr. Barnes opined Appellant met the criteria for negated pregnancy, a term which encompasses both pregnancy denial and pregnancy concealment, and that this clinical syndrome led Appellant to commit neonaticide.

{¶ 14} Dr. Barnes explained the term neonaticide was first coined in 1969, and since then a body of research has grown which has indicated what neonaticide looks like; symptom presentation, demographic profile, and the type of woman that ultimately will end up denying her pregnancy and commit neonaticide. In identifying negated pregnancy, an expert in this area looks for indicators including a young mother, a lack of criminal record, detachment, the description of the birth process, and where the infant is born. In a negated pregnancy, Dr. Barnes explained, the infant is almost always delivered into a toilet.

{¶ 15} According Dr. Barnes, while giving birth, women with this syndrome will experience a dissociative state. A dream-like state wherein the woman feels she can do nothing to change her situation, and feels as if she is just an observer of the events passing before her. Barnes noted several factors indicative of such a state in Appellant, specifically the fact that during the birth she suffered deep

internal vaginal lacerations and a loss of blood, but was found shortly after the birth sitting cross-legged on her bed as if nothing had happened. Additionally Dr. Barnes found the video of Appellant's later interrogation striking as it further demonstrated her apparent detachment. Dr. Barnes testified that Appellant's history, including her background and experiences fit the general profile of a woman at risk for negated pregnancy.

{¶ 16} Before Appellant's trial, Dr. Kristen Haskins, who completed an evaluation regarding Appellant's mental state at the time of the offenses (Defendant's exhibit 3 at the postconviction relief hearing), characterized Appellant's mental state similarly. Dr. Haskins acknowledged there was no formal mental illness diagnosis to fit the situation, but stated "there could be some concern that such incredible denial of pregnancy and delivery certainly must signal some kind of mental illness, and does suggest problems in coping with a difficult situation and a lack of coping skills and perhaps a lack of trust in others." Defendant's exhibit 3 at 16.

{¶ 17} On the second day of the hearing, the state called several of Appellant's sorority sisters and one of her friends. Most had testified at Appellant's trial. The state asked each witness how Appellant was treated within the sorority, what offers they made to help, and how Appellant reacted. In the same vein, the court questioned two of the witnesses regarding their opinion of Dr. Lewis' affidavit which theorized that Appellant's immaturity, social isolation, the putative father's insistence on secrecy, and the actions of Appellant's sorority sisters reinforcing her pregnancy denial caused Appellant to shut down, become fearful, and ultimately

deliver the baby alone and in terror. Each testified, however, that Appellant was in no way socially isolated and had the full support of her sorority sisters even though she denied being pregnant.

{¶ 18} Before closing arguments, the state moved to strike the testimony of Dr. Barnes and exclude her report. The trial court did not rule on the motion, but heard closing statements from the parties. Thereafter, the court ruled from the bench. The court found for a variety of reasons Dr. Barnes was not credible, and therefore the court would not accept her testimony as support for Appellant's argument that trial counsel was ineffective for failing to present information on neonaticide. The trial court further found that trial counsel brought the issue of neonaticide to the court's attention, albeit without "statistics and that sort of thing." The trial court therefore denied Appellant's petition.

{¶ 19} A transcript of the trial court's findings from the bench were deemed findings of fact and conclusions of law. It is from these findings of fact and conclusions of law that Appellant appeals, raising three assignments of error as follow:

I

{¶ 20} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED EMILE WEAVER'S POSTCONVICTION PETITION AFTER THE HEARING. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION POSTCONVICTION PETITION HEARING VOL. 11 TR. 269, 277-78, 283-87; APRIL 11, 2019 FINDINGS OF FACT AND CONCLUSIONS OF LAW."

II

{¶ 21} "THE TRIAL COURT VIOLATED EMILE WEAVER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL THROUGH JUDICIAL BIAS. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATE CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION."

III

{¶ 22} "THE TRIAL COURT VIOLATED EMILE WEAVER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT FAILED TO PROVIDE A MEANINGFUL OPPORTUNITY TO BE HEARD. FIFTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 10 AND 16, OHIO CONSTITUTION. TRIAL TR. 111, 115, 160."

II, III

{¶ 23} For ease of discussion, we address Appellant's assignments of error out of order.

{¶ 24} Before we can address the denial of Appellant's motion for postconviction relief, we must address Appellant's second and third assignments of error which argue the trial court judge exhibited bias against her during the postconviction relief hearing which denied her due process.

{¶ 25} Recently, in *State v. Piatt*, --N.E.2d--, 2020-Ohio-1177 at ¶ 41 the Ninth District Court of Appeals stated:

> The issue of whether a conviction must be vacated due to bias or
>
> prejudice on the part of a trial judge is one that lies exclusively within

the jurisdiction of the Chief Justice of the Ohio Supreme Court. See *State v. Polke*, 9th Dist. Medina No. 18CA0061-M, 2019-Ohio-904, 2019 WL 1264974, ¶ 7; R.C. 2701.031. This Court lacks authority "to void a trial court's judgment on the basis of personal bias or prejudice on the part of the trial judge * * *." *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, 783 N.E.2d 991, ¶ 18 (9th Dist.), citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978). Nevertheless, we may determine whether conduct on the part of a trial judge denied a criminal defendant due process of law. See, e.g., *State v. Powell*, 9th Dist. Lorain No. 12CA010284, 2017-Ohio-4030, 2017 WL 2347171, ¶ 8-13. "A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.

{¶ 26} We therefore "have the authority to review a claim of judicial bias as it impacts the outcome of the case." *State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037 (1st Dist) ¶19. Judicial bias involves "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 27}  The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. "For all its consequence, 'due process' has never been, and perhaps can never be, precisely defined." *Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Instead, "due process is a flexible concept that varies depending on the importance attached to the interest at stake and the particular circumstances under which the deprivation may occur." *State v. Aalim*, 150 Ohio St.3d 463, 2016-Ohio-8278, 83 N.E.3d 862, ¶ 13,  citing *Walters v. Natl. Assn. of Radiation Survivors*, 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). "Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." *Id.*, citing *Lassiter* at 24-25, 101 S.Ct. 2153.

{¶ 28} In the case sub judice, Appellant argues the trial court judge was biased because he unreasonably discredited viable mitigation evidence. As proof of this bias Appellant cites 1) the fact that the trial court granted the state's motion for reports authored by Dr. Barnes in any previous cases even though defense counsel argued some of the reports were in regard to juveniles, had never been used in court, or were from other states; 2) permitting Appellant's sorority sisters to testify about the impact this case had on them when the purpose of the hearing had nothing to do with the impact of the case on the sorority sisters; 3) permitting irrelevant questioning of the sorority sisters by the state regarding "collective collusion" but then sustaining the state's objection when defense counsel attempted to explore the witness's understanding of the term; 4) the

judge's decision to read the sorority sisters portions of our opinion in *Weaver II* and then ask each witness if they felt this court was holding them personally responsible for Appellant's actions; 5) appearing to have a bias about mothers and fetal care during Appellant's sentencing hearing and during the postconviction relief hearing; 6) insinuating the defense team had coached Appellant's comments to Dr. Barnes; 7) mentioning a case in the same jurisdiction involving a similar fact pattern wherein the defendant received a lighter sentence, and 8) mentioning that Appellant's first trial counsel withdrew and asking current counsel why Appellant had not taken the state's plea offer.

{¶ 29} Appellant argues that due to the forgoing points, the trial court's misunderstanding of the facts, circumstances, and law in this case, Appellant did not receive a meaningful opportunity to be heard.

{¶ 30} We begin our analysis by noting most of Appellant's eight arguments are based on speculation. Appellant first speculates the trial judge possessed a bias regarding mothers and fetal care, pointing to comments made by the judge at sentencing and again during the post-conviction relief hearing. Appellant specifically cites to the sentencing transcript at 15-16, and the post-conviction relief hearing (Hrg) at 287. The sentencing transcript has not been made part of the record of this appeal. We therefore presume the regularity of that hearing. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980); *State v. Batstra*, 5th Dist. Muskingum No. CT2016-0052, 2017-Ohio-2665, ¶ 12. Upon our examination of the record of the post-conviction relief hearing we find the judge was commenting on the evidence presented.

{¶ 31} Appellant also speculates the judge believed Appellant was coached by counsel as to what to say to Dr. Barnes. Again the record does not support Appellant's

suspicion. Rather the record reflects the judge noted Appellant's story was not consistent over time, and that two other doctors had interviewed Appellant before Dr. Barnes. The trial court noted, due to these facts, Dr. Barnes was not dealing with a "clean slate" by the time she interviewed Appellant. Hrg. 193-194. The court then commented that Appellant is intelligent and could have figured out the path her counsel was pursuing. Hrg. 198-199. The trial court may certainly consider the bias or interest of any witness, including the defendant.

{¶ 32} Likewise, Appellant speculates that by mentioning *State v. Bryant*, a case heard in the same county with a similar fact pattern and yet with a very different resulting sentence, the judge was indicating he would not be swayed as was the judge in *Bryant*. Appellant argues the judge "appeared to be punishing [Appellant] with the harshest punishment to make up for what he viewed as an injustice with *Bryant*." Appellant's brief at 20. There is simply no evidence on the record to support Appellant's speculation that the trial court was exacting some type of vengeance upon Appellant to make up for a lenient sentence imposed upon the defendant in *Bryant*. Rather, the record reflects the judge was seeking to differentiate the instant matter from *Bryant* by stating that while *Bryant* involved lighter sentence, it was imposed on "a different charge." Hrg. 286.

{¶ 33} Next, as to the trial court's decision granting the state's motion for any reports prepared for other cases by Dr. Barnes, Appellant cites two cases in support of its argument that the trial court's decision demonstrated bias which deprived her of due process. The first, *State v. Jiminez*, 2d Dist. Montgomery No. CT2017-0036, 2018-Ohio-1601, involved the requested disclosure by the defense of a rape victim's medical records. The records did not pertain to the charge of rape, but rather were records involving the

victim's alleged bipolar disorder which the defense wished to use in order to discredit the victim's report of rape. The second, *State v. Kopchak*, 5th Dist. Muskingum No. CT2017-0036, 2018-Ohio-1136, involved the state's use of the report of a defense-hired expert in its case-in-chief over the objection of the defense and when the defense had no intention to call the expert at trial. Neither of these cases are on all fours with the facts of the present matter, and neither raised a bias allegation.

{¶ 34} Here, the state in effect withdrew its motion for copies of any previous reports discussing neonaticide and authored by Barnes. After counsel for Appellant spent some time attempting to locate any such reports without success and reported the same to the trial court, the state indicated it was satisfied. Hrg. 170. Thus Appellant was ultimately not required to produce the reports. Further, there is no indication that the state would have ultimately received any such reports, as it appears from the state's motion that the trial court was to first conduct an in-camera review of the documents. Moreover, the state's motion indicated it had no objection to the reports being redacted to prevent disclosure of any protected information. Based upon these facts, we cannot say that the trial court's decision to grant the state's motion, standing alone, is evidence of bias.

{¶ 35} Next, Appellant argues the trial court demonstrated bias by asking her current counsel why Appellant had not accepted the state's plea offer, and by commenting on her first trial counsel's reasons for withdrawing which included his belief it was in Appellant's best interest to enter a guilty plea. Having reviewed the portions of the transcript cited by Appellant, we find we may only speculate as to the purpose behind the comments and Appellant does not explain why these comments demonstrate bias.

Certainly such a conversation would be inappropriate in front of a jury, however, that was not the case here.

{¶ 36} We further note these comments came amidst the mention of the *Bryant* case, and of text messages Appellant sent the alleged father after she disposed of the body of her newborn indicating "no more baby" and the matter had been "taken care of." Hrg. 273-281, state's exhibit P68. While Appellant speculates the comments indicate the trial judge became biased against her after her first trial counsel withdrew as counsel, it is also entirely possible the judge was commenting on his sentence being appropriate after he presided over the trial, heard the facts and observed the evidence, and Appellant therefore having missed an opportunity for a lesser sentence when she rejected the state's plea offer.

{¶ 37} Regardless, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). On the other hand, "[t]hey *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. emphasis original. We do not find these comments display a high degree of favoritism or antagonism, but rather are opinions formed during the course of current and prior proceedings.

{¶ 38} We next address Appellant's argument regarding the trial court permitting the state to call Appellant's sorority sisters and elicit testimony about how this matter has impacted their lives. We agree this questioning and testimony was not appropriate and wholly irrelevant. However, the same witnesses had testified at trial and the trial judge had heard the same testimony during trial. Thus, although not relevant, we find the testimony harmless, and not indicative of bias which deprived appellant due process.

{¶ 39} We further agree the trial court's act of reading portions of our opinion in *Weaver II* to two defense witnesses and asking their opinion of the same was both inappropriate and not relevant to the proceeding. The same is true for the questions to the sorority sisters regarding their understanding of the clinical term "collective collusion." These errors, however, appear to stem from a misunderstanding of our directive on remand rather than favoritism or antagonism.

{¶ 40} In conclusion, while the hearing was contentious, we do not find evidence in the record which would overcome the strong presumption that the trial court was free of bias or prejudice against Appellant or that establishes the trial court's conduct denied Appellant her right to due process. Appellant was provided a hearing, and presented evidence which the trial court listened to. Although Appellant argues the trial court interrupted her counsel and peppered counsel with questions during closing statements, again, this was a hearing to the bench and not a jury trial. Moreover, counsel was given an opportunity to address the court a second time after the state's closing remarks and declined to do so. Hrg. 283.

{¶ 41} The second and third assignments of error are overruled.

I

{¶ 42} In her first assignment of error, Appellant argues the trial court abused its discretion when it denied her motion for postconviction relief. We disagree.

{¶ 43} Our standard of review on a determination on postconviction relief is abuse of discretion. *State v. Williams*, 165 Ohio App.3d 594, 2006-Ohio-617, 847 N.E.2d 495 (11th Dist.). In order to find an abuse of discretion, we must find the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶ 44} Under this assignment of error, Appellant makes several sub-arguments. The first two include arguments addressing the ineffectiveness of trial counsel for failing to bring the clinical syndrome of neonatocide to the attention of the trial court during sentencing in order to mitigate Appellant's sentence and the trial court's failure to cite a standard and proper analysis pursuant to *Stickland v. Washington* in its findings of fact and conclusions of law following the hearing. We find, however, any ineffectiveness of trial counsel was cured by the postconviction relief hearing conducted on remand from *Weaver II.* Further, while a proper analysis is best practice, the trial court clearly found counsel for Appellant did not render ineffective assistance which prejudiced Appellant. We therefore overrule Appellant's arguments pertaining to ineffective assistance of trial counsel.

{¶ 45} Appellant next argues the trial court abused its discretion in denying her motion for postconviction relief because its decision is not supported by competent and credible evidence. Within this argument Appellant makes the same bias arguments raised in her second and third assignments of error which we have addressed above and will not readdress here. Just as we found no bias impacting the outcome of this matter, we

find the same speculative arguments do not demonstrate the trial court abused its discretion in denying Appellant's motion for post-conviction relief.

{¶ 46} Appellant further faults the trial court for failing to find Dr. Barnes credible, for appearing to believe it was bound by law to impose the harshest available sentence on Appellant, and appearing to have forgotten what Appellant had been charged with and convicted of.

{¶ 47} While Appellant challenges the trial court's failure to find Dr. Barnes credible, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, 39 Ohio Op.2d 366 (1967) paragraph one of the syllabus. Appellant appears to ask this court to make a credibility call as to Barnes' testimony. However, it is well established that we may not substitute our own credibility determination for that of the trial court. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049, 9 Ohio Op.3d 152 (1978).

{¶ 48} As for Appellant's remaining arguments, while it does appear accurate the trial court's memory of Appellant's charges and the jury's findings was faulty, Appellant has not raised that fact as error. Further, while we were not provided with a transcript of the original sentencing hearing, our review of motions made by Appellant and the sentencing judgment entry indicate the trial court was aware of the available sentences it was permitted to impose at the time Appellant was sentenced. Finally, the trial court's memory of the charges and available sentences had no bearing on the matter as the trial court found trial counsel was not ineffective for failing to present detailed information on neonaticide. We therefore reject Appellant's arguments in that vein.

{¶ 49} The trial court acted within its discretion in finding the testimony of Barnes incredible. Further the court's decision finding trial counsel was not ineffective for failing to raise the issue of neonaticide in detail was not unreasonable, arbitrary, or unconscionable. We therefore overrule the first assignment of error.

{¶ 50} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Delaney, J. concur.

EEW/rw