[Cite as *State v. Weaver*, 2017-Ohio-4374.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2016-0033 |
| EMILE L. WEAVER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  CR2015-0216


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 16, 2017


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

D. MICHAEL HADDOX                     NIKKI TRAUTMAN BASZYNSKI
PROSECUTING ATTORNEY                  ASSISTANT PUBLIC DEFENDER
GERALD V. ANDERSON II                 250 East Broad Street
ASSISTANT PROSECUTOR                  Suite 1400
27 North Fifth Street, P.O. Box 189   Columbus, Ohio  43215
Zanesville, Ohio  43702

*Wise, John, J.*

{¶1}   Appellant Emile Weaver appeals her conviction, in the Court of Common Pleas, Muskingum County, for aggravated murder and three additional felony counts. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}   In the spring of 2015, Appellant Weaver was a student at Muskingum University, residing in a campus sorority house on Lakeside Drive in New Concord. She was pregnant, but she had in various ways denied or covered up this fact.

{¶3}   On April 22, 2015, appellant went into a bathroom in the sorority house and, without assistance, delivered a daughter, Addison Grace Weaver. The baby was delivered into the toilet; appellant, while bleeding profusely, delivered the placenta, cut the umbilical cord, and pulled the baby out of the toilet. She then placed the placenta and the baby in a small pail that was in the bathroom. She thereupon left the bathroom and rested on a couch.

{¶4}   At some point, appellant returned to the bathroom with a garbage bag and placed the baby, the placenta, paper towels, and some of her clothing inside the bag. She then carried the bag to the side door of the sorority house and placed it outside, next to a garbage can. After this, she went back inside the house to lie down.

{¶5}   Later that day, two sorority members found the bag lying next to the house. They tore a hole in the bag and thereupon contacted university officials.

{¶6}   After first responders came to the scene, paramedics asked appellant if she was the mother of the baby found outside.  Appellant answered in the negative. Appellant was also interviewed that night by Detective Todd Mahle of the Muskingum County Sheriff's Office. The interview took place from 10:26 p.m. until 3:46 a.m. in a

break room at the Muskingum University Police building. Appellant eventually detailed to the detective the events that had occurred that morning, although she presented different versions as to whether Addison was born alive and the type of movements or noises she made during the whole incident. Detective Mahle did not utilize any recording equipment during the interview. At Mahle's request, appellant returned the next day at about noon to provide a recorded statement.

{¶7} An autopsy was subsequently performed on Addison. The results showed that she had been born alive, but had died of asphyxiation. Tr. at 347, 350, 382.

{¶8} On July 22, 2016, appellant was indicted by the Muskingum County Grand Jury on one count of aggravated murder, one count of gross abuse of a corpse, and two counts of tampering with evidence.

{¶9} The case proceeded to a jury trial commencing on May 10, 2016. The State's theory was that Addison died from lack of oxygen after appellant placed her inside the garbage bag. Tr. at 871. Appellant's trial counsel moved for an instruction on reckless homicide, based on the defense theory that the baby could have died from positional asphyxiation from the way that appellant placed the baby in the pail. The request for the instruction was granted. Tr. at 812, 815, 881. However, Dr. Jeffrey Lee, the deputy coroner who conducted the autopsy, had expressed doubt in his testimony that positional asphyxiation was the cause of death or asphyxiation. *See* Tr. at 408.

{¶10} Appellant was ultimately found guilty on all counts. At sentencing, the trial court merged the two tampering-with-evidence counts and imposed a one-year prison sentence on said offense. The trial court further imposed a three-year prison sentence for gross abuse of a corpse. It ordered these sentences to run consecutively to each

other and to the sentence for aggravated murder. Finally, the trial court imposed life in prison without parole for the offense of aggravated murder. In support of its sentencing decision, the trial court concluded that appellant was not remorseful, that she had committed "the worst form of the offense," and that she had caused emotional hardship to her sorority sisters. Sentencing Tr. at 10-16.

{¶11}  On July 20, 2016, appellant filed a notice of appeal. She herein raises the following four Assignments of Error:

{¶12}  "I.  THE TRIAL COURT ERRED WHEN IT IMPOSED A LIFE-WITHOUT-PAROLE SENTENCE UPON EMILE WEAVER.

{¶13}  "II.  EMILE WEAVER'S SENTENCE IS DISPROPORTIONATE TO HER CONDUCT.

{¶14}  "III.  THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES UPON EMILE WEAVER.

{¶15}  "IV.   EMILE WEAVER'S CONVICTION FOR GROSS ABUSE OF A CORPSE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{¶16}  In her First Assignment of Error, appellant contends the trial court erred in imposing a sentence of life without parole for her offense of aggravated murder.

{¶17}  As an initial matter, it is incumbent that we consider our statutory authority to consider the present assigned error. We first note that R.C. 2953.08 governs appellate review of felony sentencing. R.C. 2953.08(A) states that "[i]n addition to any other right to appeal *and except as provided in division (D) of this section*, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence

imposed upon the defendant on [one of the grounds listed in subsections (A)(1) through (A)(5)]". (Emphasis added). In turn, R.C. 2953.08(D)(3) provides: "A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

**{¶18}** The Eighth District Court of Appeals has cogently stated: "The General Assembly's practice of treating sentencing for aggravated murder and murder convictions differently from other felonies is longstanding." *State v. Hollingsworth,* 143 Ohio App.3d 562, 569, 758 N.E.2d 713 (8th Dist. 2001). Furthermore, "[t]here is no constitutional right to appellate review of a criminal sentence, so 'the only right to appeal is the one provided by statute.' " *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 14, citing *State v. Akins,* 8th Dist. Cuyahoga No. 99478, 2013–Ohio–5023, ¶ 11.

**{¶19}** The Ohio Supreme Court has concluded that the pertinent language of R.C. 2953.08(D), *supra*, is unambiguous.[1] *See State v. Porterfield*, 106 Ohio St.3d 5, 829 N.E.2d 690, 2005-Ohio-3095, ¶ 17. Thus, "[the language] '[a] sentence imposed for aggravated murder or murder pursuant to section 2929.02 to 2929.06 of the Revised Code is not subject to review under this section' clearly means what it says: such a sentence cannot be reviewed." *Id.* Likewise, in *State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647, an appeal of an aggravated murder conviction, we reviewed the aforesaid statute and succinctly held as follows: "Pursuant to R.C.

---

[1] At the time *Porterfield* was decided, R.C. 2953.08(D) had not yet been subdivided into (D)(1), (D)(2), and (D)(3).

2953.08(D)(3) and case law interpreting this statute, this Court is without statutory authority to review appellant's sentence on an evidentiary basis." *Id.* at ¶ 70.

**{¶20}** In the case *sub judice*, appellant challenges the trial court's determinations in its sentencing decision that life without parole comported with the overriding purposes of felony sentencing, that appellant had committed the worst form of the offense, that appellant was not remorseful, and that the appellant's crime impacted witnesses and others. We note Article IV, Section 3(B)(2) of the Ohio Constitution provides that courts of appeals have "such jurisdiction *as may be provided by law* to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." (Emphasis added). Pursuant to the clear mandate of the General Assembly in R.C. 2953.08(D)(3), as well as the case law precedent set forth in *Porterfield* and *Patterson*, *supra*, we find appellant's above arguments are unreviewable in the present appeal. We reach a similar conclusion in regard to appellant's additional claim, raised in her appellate reply brief, that R.C. 2953.08(D)(3) violates the Equal Protection Clause.

**{¶21}** Appellant's First Assignment of Error is therefore denied on the basis of lack of appellate jurisdiction.

II.

**{¶22}** In her Second Assignment of Error, appellant argues the trial court's sentence of life without parole for the offense of aggravated murder is disproportional to her conduct and constitutes reversible error.

**{¶23}** R.C. 2929.11(B) states: "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set

forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

**{¶24}** However, a criminal defendant's challenge to murder and aggravated murder sentences based upon proportionality or consistency analysis is not subject to appellate review pursuant to R.C. 2953.08(D)(3). *See State v. White,* 8th Dist. Cuyahoga No. 101576, 2015–Ohio–2387, ¶ 67– ¶ 68. Accordingly, we hold appellant's disproportionality argument is not cognizable in the present appeal

**{¶25}** Appellant's Second Assignment of Error is denied on the basis of lack of appellate jurisdiction.

III.

**{¶26}** In her Third Assignment of Error, appellant contends the trial court erred in imposing consecutive sentences regarding her four felony offenses, subsequent to merger of two of the counts. We disagree.

**{¶27}** Under R.C. 2953.08(G)(2)(a), we are mandated in this instance to consider on appeal whether there is clear and convincing evidence that the record in the case *sub judice* does not support the sentencing court's findings under R.C. 2929.14(C)(4) to impose consecutive sentences. *See State v. Deeb,* 6th Dist. Erie No. E–14–117, 2015–Ohio–2442, ¶ 27. Our current methodology for consecutive sentence review stems from 2011 Am.Sub.H.B. No. 86, which revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the

imposition of consecutive sentences that were effective in the pre-*Foster* era. *See State v. Wells,* 8th Dist. Cuyahoga No. 98428, 2013–Ohio–1179, ¶ 11.

**{¶28}** We thus direct our attention to R.C. 2929.14(C)(4), which provides as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender *and* that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, *and* if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶29}** (Emphases added).

**{¶30}** In sum, "R.C. 2929.14(C)(4) provides that a trial court may require the offender to serve multiple prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any one of three facts specified in subdivisions (a), (b), and (c)." *State v. Leet,* 2nd Dist. Montgomery No. 25966, 2015–Ohio–1668, ¶ 15 (internal quotations and brackets omitted).

**{¶31}** A presumption of regularity attaches to all trial court proceedings. *See, e.g., Black v. Chiropractic Assocs. of Zanesville, L.L.C.,* 5th Dist. Muskingum No. CT2013–0012, 2014–Ohio–192, ¶ 20, citing *Chari v. Vore* (2001), 91 Ohio St.3d 323, 325, 744 N.E.2d 763. In addition, we have held on numerous occasions that although H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence. *See, e.g., State v. Collins,* 5th Dist. Knox No. 12 CA 20, 2013–Ohio–2419, ¶ 22, citing *State v. Bentley,* 3rd Dist. Marion No. 9–12–31, 2013–Ohio–852, ¶ 12. Moreover, the Ohio Supreme Court has clearly held: "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell,* 140 Ohio St.3d 209, 16 N.E.3d 659, 2014–Ohio–3177, syllabus. However, the record must demonstrate that consecutive

sentences are appropriate and clearly supported. *See State v. Ducker,* 5th Dist. Stark No. 2012CA00192, 2013–Ohio–3657, ¶ 16.

**{¶32}** The trial court in the case *sub judice* found under R.C. 2929.14(C)(4) that consecutive sentences were necessary to protect the public and to punish appellant. Sentencing Tr. at 17. It further found that said consecutive sentences were not disproportionate to the seriousness of the conduct and the danger appellant poses to the public. *Id.* Lastly, it found that "two or more of the multiple offenses * * * were so great and unusual that no single prison term for any of those offenses committed as part of any of the course (sic) of conduct adequately reflects the seriousness" of appellant's conduct. *Id. See, also,* Sentencing Entry at 2*.*

**{¶33}** Appellant's essential argument in regard to her challenge to consecutive sentences is that her actions in killing her own newborn child should not be equated to a danger to the public, in part relying on scientific articles (not presented to the trial court during sentencing) that have apparently concluded recidivism rates are low for persons who have committed what has been termed neonaticide. However, we find appellant ignores the additional dangers to the public she manifested via her offenses, not the least of which include her blatant disregard for law enforcement and the justice system via her attempts to dispose of the baby and other evidence of the murder, and the wide range of psychological repercussions her behaviors likely have had on the campus community and her sorority sisters, particularly those who made the grisly discovery of the garbage bag. *See* Sentencing Tr. at 14-15, 17. Upon review, we hold the trial court adequately reviewed the matter of consecutive sentences, and we find no clear and

convincing evidence that the record does not support the trial court's findings under R.C. 2929.14(C)(4) for purposes of imposing consecutive sentences. *Deeb, supra.*

**{¶34}** Appellant's Third Assignment of Error is therefore overruled.

IV.

**{¶35}** In her Fourth Assignment of Error, appellant maintains her conviction for gross abuse of a corpse was not supported by sufficient evidence. We disagree.

**{¶36}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010-Ohio-15, ¶ 11.

**{¶37}** Appellant was charged under R.C. 2927.01(B), which states that "[n]o person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities."

**{¶38}** Appellant correctly notes that the State's theory of the case was that appellant caused the death of newborn Addison by placing her inside a garbage bag, ultimately resulting in the asphyxiation of the child. Dr. Lee, the deputy coroner, testified that the baby was born alive and that she died from lack of oxygen. Trial Tr. at 347, 382. The defense inquired about "positional asphyxiation," asking Dr. Lee whether the baby might have died from being placed in a position that did not allow her to breathe. Tr. at

403. The State followed up on this theory with Dr. Lee on re-direct examination, at which time he concluded that positional asphyxiation was not the cause. Tr. at 408. Thus, although the State does not presently concede the point, under the State's trial theory, Addison likely died *after* being placed inside the garbage bag. Appellant thus urges that the State failed to prove that she illegally handled or treated a corpse.

{¶39} While neither side has presented any case law authority on point, we find no merit in appellant's contention. Under the unusual and tragic circumstances presented, the jurors could properly find that appellant was responsible, at minimum, for putting Addison into an environment in which, if still alive, she was almost certain to quickly suffocate. We hold reasonable jurors could thus conclude beyond a reasonable doubt that appellant foreseeably created the circumstances under which the baby's subsequently deceased body was inevitably subjected to treatment considered outrageous to reasonable community sensibilities. We therefore hold that the State proved the elements of gross abuse of a corpse beyond a reasonable doubt.

{¶40} Accordingly, appellant's Fourth Assignment of Error is overruled.

{¶41} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.

By: Wise, John, J.
Gwin, P. J., and
Baldwin, J., concur.

JWW/d 0516