[Cite as *State v. Weaver*, 2018-Ohio-2509.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. CT2017-0075 |
| EMILE L. WEAVER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County Court
                             of Common Pleas, Case No. CR2015-0216


JUDGMENT:                    Reversed and Remanded


DATE OF JUDGMENT ENTRY:      June 21, 2018


APPEARANCES:


For Plaintiff-Appellee              For Defendant-Appellant


D. MICHAEL HADDOX                   NIKKI TRAUTMAN BASZYNSKI
Prosecuting Attorney                Assistant State Public Defender
Muskingum County, Ohio             250 East Broad Street, Suite 1400
                                   Columbus, Ohio 43215
By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43702-0189

*Hoffman, J.*

{¶1}   Appellant Emile L. Weaver appeals the judgment entered by the Muskingum County Common Pleas Court dismissing her petition for postconviction relief without a hearing.  Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   During the spring of 2015, Appellant was a student at Muskingum University, residing in a campus sorority house on Lakeside Drive in New Concord. She denied and covered up the fact she was pregnant.

{¶3}   On April 22, 2015, Appellant went into a bathroom in the sorority house and, without assistance, delivered a daughter, Addison Grace Weaver. The baby was delivered into the toilet.   While bleeding profusely, Appellant delivered the placenta, cut the umbilical cord, and pulled the baby out of the toilet. She then placed the placenta and the baby in a small pail that was in the bathroom. She thereupon left the bathroom and rested on a couch.

{¶4}   At some point, Appellant returned to the bathroom with a garbage bag and placed the baby, the placenta, paper towels, and some of her clothing inside the bag. She carried the bag to the side door of the sorority house and placed it outside, next to a garbage can. After this, she went back inside the house to lie down.

{¶5}   Later that day, two sorority members found the bag lying next to the house. They tore a hole in the bag, saw the baby, and called the police.

{¶6}   After first responders came to the scene, paramedics asked Appellant if she was the mother of the baby found outside. Appellant responded she was not the baby's mother. Appellant was also interviewed the same night by Detective Todd Mahle of the

Muskingum County Sheriff's Office. The interview took place from 10:26 p.m. until 3:46 a.m. in a break room at the Muskingum University Police building. Appellant eventually detailed to the detective the events which had occurred earlier in the day, although she presented different versions as to whether Addison was born alive. Detective Mahle did not utilize any recording equipment during the interview. At Mahle's request, Appellant returned the next day at about noon to provide a recorded statement.

{¶7} An autopsy was subsequently performed on Addison. The results showed she had been born alive, but had died of asphyxiation. Tr. at 347, 350, 382.

{¶8} On July 22, 2015, Appellant was indicted by the Muskingum County Grand Jury on one count of aggravated murder, one count of gross abuse of a corpse, and two counts of tampering with evidence. The case proceeded to a jury trial commencing on May 10, 2016. Appellant was found guilty on all counts.

{¶9} At sentencing, the trial court merged the two tampering-with-evidence counts and imposed a one-year prison sentence on said offense. The trial court further imposed a three-year prison sentence for gross abuse of a corpse. It ordered these sentences to run consecutively to each other and to the sentence for aggravated murder. Finally, the trial court imposed life in prison without parole for the offense of aggravated murder. In support of its sentencing decision, the trial court concluded appellant was not remorseful, she had committed "the worst form of the offense," and she had caused emotional hardship to her sorority sisters. Sentencing Tr. at 10–16.

{¶10} Appellant filed an appeal to this Court raising four assignments of error: the trial court erred in imposing a sentence of life imprisonment without the possibility of parole, the sentence is disproportionate to her conduct, the court erred in imposing

consecutive sentences, and the conviction of gross abuse of a corpse was not supported by sufficient evidence. We found we were without statutory authority to review the sentence for aggravated murder, and therefore overruled Appellant's first two assignments of error on the basis of lack of appellate jurisdiction. *State v. Weaver,* 5th Dist. Muskingum No. CT2016–0033, 2017-Ohio-4374. We overruled her remaining assignments of error on the merits and affirmed the judgment of the trial court.

{¶11} Appellant filed a postconviction petition on August 25, 2017, an amended petition on September 5, 2017, and a second-amended petition on September 6, 2017. The State filed its response on September 18, 2017.

{¶12} In her petition, Appellant alleged counsel was ineffective for failing to present evidence concerning neonaticide in mitigation of sentence. She attached to her petition an affidavit of Dr. Clara Lewis, and an article by Michelle Oberman discussing neonaticide, including sentencing data. In her affidavit, Dr. Lewis, who is a professor at Stanford University, stated she read the transcript and docket from Appellant's trial. She also reviewed news media coverage of the case and social media posts available from Appellant and her friends. In addition, she conducted a personal interview with Appellant on August 23, 2017. The affidavit stated in her expert opinion, Appellant's case is a typical example of contemporary neonaticide, her sentence is disproportionately harsh when compared to sentences given to others convicted of the crime, and the defense failed to introduce relevant information about the social and cultural causes of neonaticide, which would have provided context for understanding the crime and established mitigation. In her affidavit and her attached report, Dr. Lewis explained how immaturity, social isolation, the insistence of her ex-boyfriend on secrecy during the pregnancy and the actions of her

sorority sisters reinforcing her denial of the pregnancy caused Appellant to shut down and become deeply fearful.  Dr. Lewis also noted in her affidavit:

Birth takes hours. It is a painful and noisy process.  Doing it alone, in silence, in a shared bathroom speaks to Emile's abject terror, as well as to her belief that she had no one she could trust.  Anyone might have averted this outcome by offering to help.  Instead, she was left alone.

Lewis affidavit, ¶15.

{¶13}  In the report attached to her affidavit, Lewis further explained while many find it impossible to understand how and why a woman can commit the act of infanticide, psychiatrists explain there's a profile:  "Women who commit neonaticide tend to be immature, isolated, worried about the judgment of others on issues ranging from sex to abortion to unwed motherhood."  Research reveals women who commit neonaticide, including Appellant, receive no prenatal care, suffer from pregnancy denial, make no plans for their labor or delivery, and labor alone on toilets without medical care.  When the baby arrives denial shatters and panic ensues.  The crimes are not carefully planned, but rather are "poorly concealed acts of desperation."

{¶14}  Dr. Lewis expressed the loss of the newborn's life is a tragedy for which Appellant deserved to be punished, but in her expert opinion, had the existing body of research on neonaticide been brought to bear on Appellant's sentence, it would have demonstrated substantial grounds to mitigate her individual culpability.

**{¶15}** The trial court dismissed the petition without a hearing. The court found Appellant's argument of ineffective assistance was barred by res judicata, as it could have been raised on direct appeal. The court further noted prior to trial Appellant was found competent to stand trial, and sane at the time she committed the offense.

**{¶16}** It is from the September 28, 2017 judgment dismissing her petition for postconviction relief Appellant prosecutes her appeal, assigning as error:

"THE TRIAL COURT ERRED WHEN IT DENIED EMILE WEAVER'S

POSTCONVICTION PETITION WITHOUT A HEARING."

**{¶17}** When a defendant files a postconviction petition pursuant to R.C. 2953.21, the trial court must grant an evidentiary hearing unless it determines the files and records of the case show the petitioner is not entitled to relief. R.C. 2953.21(F). A trial court may also dismiss a petition for postconviction relief without holding a hearing when the doctrine of res judicata bars the claims raised in the petition. *State v. Szefcyk*, 77 Ohio St.3d 93, 1996–Ohio–337, 671 N.E.2d 233. Under the doctrine of res judicata, a defendant who was represented by counsel is barred from raising an issue in a petition for postconviction relief if the defendant raised or could have raised the issue at trial or on direct appeal. *Id.* at 95.

**{¶18}** A trial court's decision to grant or deny a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief if it

is supported by competent and credible evidence. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. However, as the Fourth District Court of Appeals has discussed, the question of the standard of review to apply when the petition is dismissed without a hearing was not addressed by *Gondor*:

As we noted in *State v. Harrington*, 172 Ohio App.3d 595, 2007-Ohio-3796, 876 N.E.2d 626, at ¶ 9, there is some uncertainty concerning the appropriate standard of review used by an appellate court when reviewing a trial court's decision to dismiss a petition for postconviction relief without an evidentiary hearing. See also *State v. Hoffner*, Lucas App. No. L-01-1281, 2002-Ohio-5201, at ¶ 6. Appellate courts, including this one, have applied varying standards, including de novo, see *State v. Gibson*, Washington App. No. 05CA20, 2005-Ohio-5353, abuse of discretion, see *State v. McKnight*, Vinton App. No. 07CA665, 2008-Ohio-2435, and a mixed question of fact and law, see *Harrington*, supra. While the Supreme Court of Ohio held in *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, that courts of appeals are to apply an abuse of discretion standard in the context of reviewing a trial court's decision on a petition after it conducts an evidentiary hearing, it did not address the appropriate standard on this type of proceeding, i.e., where the trial court summarily dismisses a petition without a hearing. Because decisions denying such petitions involve both factual and legal questions, we apply a mixed question of law and fact standard of review to determine whether the petition

states substantive grounds for relief. See *Harrington*, supra. Thus, we review the trial court's decision on factual issues using a manifest weight standard of review, and we review the trial court's decision on legal issues on a de novo basis. See *Hoffner*, supra.

**{¶19}** *In re B.C.S.*, 4th Dist. Washington No. 07CA60, 2008-Ohio-5771, ¶ 9.

**{¶20}** The trial court found the claim of ineffective assistance of counsel raised in the petition was barred by res judicata. This is a question of law, and therefore we review the decision de novo.

**{¶21}** "Generally, the introduction in an R.C. 2953.21 petition of evidence *dehors* the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982).

**{¶22}** The State argues Appellant failed to present evidence outside the record, as a "critique of her sentence that was created afterwards and an article discussing neonaticide that was published in 1996 are not evidence *dehors* the record." Brief of Appellee, p.6-7.

**{¶23}** We agree with the State the article by Michelle Oberman discussing neonaticide which Appellant attached to her petition is not evidence. However, we find the affidavit of Dr. Lewis and her attached report do constitute evidence outside the record. Dr. Lewis reviewed the case and conducted a personal interview with Appellant. Her affidavit and report are not simply a critique of the sentence, but rather explain neonaticide in general and as applied to Appellant. She further elaborates on the effect

of the failure of counsel to present evidence concerning current research on neonaticide in mitigation of Appellant's sentence. Appellant's claim of ineffective assistance of counsel relies on evidence outside the record, and therefore could not have been presented on direct appeal. The court erred in finding the claim barred by res judicata.

**{¶24}** We also find the court erred in suggesting the claim is barred by res judicata because Appellant was found competent to stand trial, and found to be sane at the time of the offense. Evidence of neonaticide presented in mitigation of sentencing is not governed by the same legal standard required to demonstrate a person is incompetent to stand trial or not responsible for their actions due to insanity at the time of the offense. In fact, Dr. Lewis specifically stated Appellant should be punished for her crime.

**{¶25}** Finally, while the court also notes the same mitigation argument was made on direct appeal, we held on direct appeal we lacked jurisdiction to consider either the propriety or the proportionality of the sentence pursuant to R.C. 2953.08(D)(3). *State v. Weaver, supra,* ¶16-25. Therefore, the claim could not be addressed on direct appeal.

**{¶26}** The State further argues the evidence presented by Appellant does not meet a "threshold standard of cogency" to defeat a claim of res judicata as required by *State v. Lawson,* 103 Ohio App. 3d 307, 659 N.E.2d 362 (12th Dist. Clermont 1995), which states,

>        Evidence presented outside the record must meet some threshold
> standard of cogency; otherwise it would be too easy to defeat the holding
> of *Perry* by simply attaching as exhibits evidence which is only marginally

significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.

*Id.* at 315.

**{¶27}** In the instant case, counsel mentioned neonaticide only in passing in his argument to the court regarding sentence:

> With regard to this particular offense, unfortunately, across this country there will be 2 to 300 young girls who will commit this offense. That is not an individual problem, but it is a societal problem that we have. This offense most typically is the result of exposure only second [sic] by asphyxiation by placing a child in a trash bag.
>
> I understand that when it comes to sentencing, the Court has to consider whether or not its sentence will deter others from committing this offense. Until we address in the greater issue of neonaticide, that deterrence, regardless of the sentence, will not be affected.

Sent. Tr. 6-7.

**{¶28}** In sentencing Appellant to life without possibility of parole, the court stated in pertinent part:

Upon review of the presentence investigation, the Court will note several things. One, I did hear the case, and I did hear your comments. I'm told that you have remorse. At the time you talked with Detective Mahle, it was said more than once that you were more concerned for your own safety than that of the baby's. And you gave your taped statement: I was more concerned about me and my wellbeing. I didn't do anything to keep her alive. Why? I was more concerned about myself. That does not show or verbalize any type of remorse about what happened.

The Court also got to see and read the text message you sent later that day that you took care of the problem. That was probably the most truthful statement you made that entire day. You did take care of your problem. It was a problem to you. It was an inconvenience, and you took care of it.

Sent. Tr. 10.

{¶29} After reading a letter written by Appellant concerning the death of the baby, the court continued:

In those four short paragraphs, you mention I 15 times, and my 5 times.  Once again, it's all about you.  To have killed your child and walk up and look at them in the casket, I just can't imagine.

What you have put other people through in this case is terrible, and I'm going to read to you some of the excerpts of what you have put these people through, and they are put through every day of their lives.

Sent. Tr. 12.

{¶30}  After reading excerpts of letters from Appellant's sorority sisters, as well as from Appellant's family, the court concluded:

I can understand that people may feel sympathy for you if they don't know what happened in this case, but what I find in this case is that for a number of months, you tried over and over to take that baby's life.  As indicated from the letters from the sorority sisters, you would starve yourself from time to time; you would fall down a lot; you engaged in risky activities from drinking and smoking pot to playing dodgeball.  You went to get birth control, then you got the Black Cohosh, and 80 out of 100 pills in about two weeks were taken, or at least not in the bottle anymore.  You knew that by opening that bottle could cause a miscarriage.

For all this, the Court finds that, one, you committed the worst form of the offense.  It's aggravated murder based upon the age of the victim.

You can't get any younger than this victim, so it's the worst form of the offense.

As indicated by the prosecutor, your relationship to the victim caused it. It was your own child. Mothers are supposed to protect and nurture their children, not kill them just because it was inconvenient.

Sent. Tr. 15-16.

**{¶31}** The affidavit and report of Dr. Clara Lewis submitted with Appellant's petition for postconviction relief explained the psychiatric and cultural issues surrounding neonaticide far beyond counsel's casual mention at the sentencing hearing, and provided information to contextualize the same actions which the court used to support the sentence of life without possibility of parole. The evidence is directly in contravention of the arguments of the State accepted by the judge in imposing the harshest sentence available for the offense. We find the evidence submitted with Appellant's petition meets the threshold level of cogency to defeat a claim of res judicata.

**{¶32}** We conclude the court erred as a matter of law in dismissing the petition without a hearing on the basis of res judicata. The assignment of error is sustained.

**{¶33}** The judgment of the Muskingum County Common Pleas is reversed.  This case is remanded to that court with instructions to conduct an evidentiary hearing on Appellant's petition for postconviction relief.


By: Hoffman, J.

Wise, John, P.J.  and

Baldwin, J. concur