[Cite as *State v. Nelson*, 2022-Ohio-4170.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2021CA00112 |
| | : | |
| TAHI ANTONIO NELSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
                             Common Pleas, Case No. 2020CR0921




JUDGMENT:                     AFFIRMED




DATE OF JUDGMENT ENTRY:        November 22, 2022




APPEARANCES:


For Plaintiff-Appellee:                For Defendant-Appellant:

KYLE L. STONE                          D. COLEMAN BOND
STARK COUNTY PROSECUTOR                116 Cleveland Ave. NW
                                       Canton, OH 44702
TIMOTHY E. YAHNER
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Tahi Antonio Nelson appeals his September 20, 2021 conviction and sentence by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On July 27, 2020, the Stark County Grand Jury indicted Defendant- Appellant Tahi Antonio Nelson on one count of Murder, an unclassified felony in violation of R.C. 2903.02.(A)/(D) and R.C. 2929.02(B), with a firearm specification per R.C. 2941.145(A); and one count of Having a Weapon Under Disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(B).

{¶3} Nelson entered a plea of not guilty to the charges. He waived his right to a jury trial on the second count.

### Jury Trial

{¶4} A jury trial on the murder count began on September 7, 2021. The following facts were adduced at trial.

### The Relationship between the Victim and Nelson

{¶5} The victim in this case was R.R., a 42-year-old woman and mother of four adult children. R.R.'s mother testified that R.R. had been in an off-and-on-again romantic relationship with Nelson for approximately ten years. R.R. purchased her first home in March of 2019, which was located on Coventry Boulevard in Canton, Ohio. R.R. lived alone, but in late 2019, Nelson moved into the Coventry Boulevard home with R.R.

### R.R. and Nelson were at the Brick City Bar

{¶6}   A security guard for the Brick City Bar testified that he saw R.R. and Nelson at the bar on March 7, 2020. The security guard testified that weapons are not permitted in the bar. Before patrons can enter the bar, the security guard searches them for weapons.

{¶7} A female witness who knew both Nelson and R.R. testified that she saw them together at the Brick City Bar in the late evening hours on March 7, 2020. The witness observed that Nelson appeared to be drunk while at the bar, but not out of control. Nelson's ex-girlfriend was also at the bar, and it appeared to the witness that R.R. was upset by her presence.

{¶8} Brick City Bar usually closes at 2:00 a.m. On March 7, 2020, daylight savings time began at 2:00 a.m., moving the clocks forward to 3:00 a.m. Before the bar closed, Nelson got into a verbal argument with a bar employee, after which bar security asked Nelson to leave the bar. The female witness convinced Nelson to leave the bar and she walked out of the bar with Nelson and R.R. Before they left the bar, R.R. paid her bar bill with her credit card. The credit card receipt showed the time was 1:57 a.m. The female witness saw R.R. and Nelson get into R.R.'s car, a Saturn Vue, with R.R. in the driver's seat and Nelson in the passenger's seat.

### R.R. Found Dead in Her Car

{¶9} Officer Robert Huber with the City of Canton Police Department was working the midnight shift on March 7, 2020. At 3:23 a.m. on March 8, 2020, Officer Huber was dispatched to the 2300 block of Harmont Avenue in Canton, Ohio. The 2300 block of Harmont Avenue was approximately four to five minutes away from the Brick City Bar and

a half-mile from Coventry Boulevard. A witness had called 911 after he found R.R. slumped over the driver's seat of her vehicle, which was stopped in the middle of Harmont Avenue. The witness observed the body in the stopped vehicle between 3:15 and 3:23 a.m.

{¶10} Upon Officer Huber's arrival to the scene, he observed a Saturn Vue sitting directly in the northbound lane of the 2300 block of Harmont Avenue. The vehicle's lights were on, but the brake lights were not illuminated. All the vehicle's doors were shut. Officer Huber approached the driver's side and the driver's side door was locked. He walked around the front of the car and saw a bullet hole in the front windshield. He approached the passenger's side door and found it was unlocked. He opened the passenger's side door and observed R.R. unconscious in the driver's seat, with a large volume of blood coming from the back of her head and pooling on the floorboard. Officer Huber checked her vitals and determined she was not breathing and there was no movement in her chest.

{¶11} While looking inside the vehicle, Officer Huber noticed the vehicle was still in drive, but the ignition was off, and the keys were in the ignition. The passenger's seat was reclined in a far back position. There was a green neon sock on the ground outside the car and a matching green neon sock inside the car, leading Officer Huber to believe that someone else had been in the passenger seat of the car and knocked the sock out of the car. There was no space in the backseat of the car for someone to sit because it was covered in personal items.

{¶12} Officer Huber then noticed a spent shell casing on the passenger floorboard of the vehicle. The spent shell casing was collected as evidence. Upon examination, the

spent shell casing found on the passenger floorboard was determined to be manufactured by Aguila and .380 caliber.

{¶13} DNA swabs were taken from the vehicle and the car keys. Fingerprints were also pulled from the interior of the car.

{¶14} The bullet hole in the windshield was examined and determined to have been caused by a bullet shot from a firearm inside the vehicle.

Autopsy Evidence

{¶15} The Stark County Coroner determined R.R.'s cause of death was a homicide. R.R. had been shot in the back of the head, with the bullet traveling through her skull and brain, stopped by the sphenoid bone at the bottom of the base of her brain. Because of R.R.'s hair, it could not be determined how far the muzzle was from R.R.'s head when she was shot.

{¶16} The bullet was recovered and preserved as evidence.

Bullets and a Gun found at R.R.'s Home

{¶17} On March 8, 2020, detectives with the City of Canton Police Department informed R.R.'s mother that R.R. had died. R.R.'s mother told the detectives that Nelson was R.R.'s boyfriend. R.R.'s mother provided the detectives with a key to R.R.'s home after they informed her they were going to get a search warrant for the home.

{¶18} The detectives obtained a search warrant for R.R.'s home and requested SWAT assistance in executing the warrant. The detectives had attempted to contact Nelson as a person of interest and could not locate him. When they entered the home, the officers found it was very cluttered. They collected two cell phones as a result of the

search but there wasn't any useful evidence on the cell phones. The officers returned the house keys to R.R.'s mother.

{¶19} R.R.'s mother took responsibility of R.R.'s home. R.R.'s children and mother visited the home after R.R.'s death. On April 6, 2020, R.R.'s mother attempted to clean her daughter's house for the first time after her daughter's death. While she was cleaning R.R.'s bedroom, R.R.'s mother found a plastic bag on the ground, in the corner of the room next to a dresser. She looked in the bag and found three boxes of bullets. She put the bag back where she found it and called the police. The police came and collected the plastic bag containing the three boxes of bullets.

{¶20} On April 12, 2020, R.R.'s mother and child were doing yardwork at R.R.'s home. While R.R.'s mother was using an edger around a shed in the backyard, she discovered a gun partially sticking out from under the shed. R.R.'s mother got a plastic grocery bag and used the bag to pick up the gun. She placed the plastic bag containing the gun in R.R.'s garage. Because it was Sunday, R.R.'s mother waited until Monday to call the police to report the gun. The police came and collected the plastic bag and gun.

Analysis of the Gun and Bullets

{¶21} The bag containing three boxes of bullets found by R.R.'s mother in R.R.'s bedroom was determined to contain .380 caliber bullets manufactured by Aguila.

{¶22} The gun found under the shed at R.R.'s home was determined to be a .380 caliber Jimenez semiautomatic firearm. It was tested and found to be operable. There was a spent shell casing still inside the chamber of the gun, which was not properly ejected from the weapon the last time it was fired. The gun contained a cartridge

magazine with four live rounds, all .380 caliber. Two of the rounds were manufactured by Aguila and the other two rounds were manufactured by TulAmmo.

{¶23} The .380 Jimenez firearm found under the shed was compared to the spent shell casing located on the floor of R.R.'s vehicle. The spent shell casing was identified as being manufactured by Aguila and .380 caliber. Larry Mackey with the Canton Stark County Crime Laboratory opined to a reasonable degree of scientific certainty that the spent shell casing recovered from the floorboard of R.R.'s vehicle was fired from the .380 Jimenez semiautomatic firearm recovered from under the shed of R.R.'s home. Mackey also opined to a reasonable degree of scientific certainty that the bullet recovered from R.R.'s brain was also fired from the .380 Jimenez firearm found under the shed of R.R.'s home.

## Nelson Found Hiding in a Shower

{¶24} The detectives attempted to contact Nelson by telephone, but they could not reach him. R.R.'s mother said that Nelson did not contact her or attend R.R.'s funeral services. On May 14, 2020, a Canton City police detective responded to a call at an apartment regarding an unrelated female suspect. He searched the apartment upon permission of the occupant and discovered Nelson in the bathroom shower, wearing shorts and slides. The bathroom lights were off, the shower curtain was closed, and no water was running.

## DNA Analysis

{¶25} When R.R.'s body was discovered, the police swabbed the interior of R.R.'s vehicle and car keys for DNA. The DNA standards for R.R., Nelson, and the Stark County Coroner were obtained for testing. It was necessary to obtain the DNA standard for the

Stark County Coroner because he touched the keys in the ignition of R.R.'s car. The car keys were tested using a DNA analysis that showed a major profile matching R.R.'s standard; however, there was more than one DNA profile observed. The Stark County Coroner was excluded as being a major contributor. The testing showed there was male DNA on the car keys, but the minor DNA data was not sufficient for comparison purposes. The DNA analysis of the swab taken from the right interior door handle of R.R.'s vehicle showed that R.R. was the major contributor.

{¶26} The .380 Jimenez firearm found at R.R.'s home was swabbed for DNA. In choosing to swab the gun for DNA, this destroyed any latent fingerprints on the gun. R.R.'s DNA was found on the sight of the .380 Jimenez firearm. Male DNA was found on the gun, but Nelson could not be included or excluded as the donor of the sample recovered because the material collected was insufficient for comparison.

### Jury Verdict

{¶27} At the close of the State's case, counsel for Nelson moved for acquittal based on Crim.R. 29. The trial court denied the motion. Nelson then rested and renewed his Crim.R. 29 motion, which the trial court denied.

{¶28} The jury returned its verdict, which found Nelson guilty of murder and the accompanying firearm specification.

### Sentencing Hearing

{¶29} The trial court held the sentencing hearing on September 15, 2021. Nelson had waived his right to a jury trial as to Count Two, having a weapon under disability. Considering the evidence presented at the trial, the trial court found Nelson guilty on Count Two.

{¶30} The trial court sentenced Nelson to 15 years to life in prison on Count One, with an additional three years in prison for the firearm specification, to be served consecutively to the sentence in Count One. The trial court next sentenced Nelson to 36 months in prison on Count Two, to be served consecutively to the sentences in Count One and the firearm specification. In total, Nelson was sentenced to 21 years to life in prison. The sentence was journalized via sentencing entry filed on September 20, 2021.

{¶31} It is from this conviction and sentence that Nelson now appeals.

## ASSIGNMENTS OF ERROR

{¶32} Nelson raises three Assignments of Error:

{¶33} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶34} "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶35} "III. APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS [SIC] WERE VIOLATED AS HE WAS DENIED APPELLATE REVIEW OF HIS SENTENCE UNDER R.C. 2953.08, AS SUBSECTION (D)(3) UNCONSTITUTIONALLY PROHIBITS REVIEW OF A SENTENCE IMPOSED FOR MURDER."

**ANALYSIS**

**I. and II. Manifest Weight and Sufficiency of the Evidence**

{¶36} In his first and second Assignments of Error, Nelson contends his convictions were against the sufficiency and manifest weight of the evidence. We disagree.

{¶37} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶38} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the

evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶39} Nelson was convicted of murder in violation of R.C. 2903.02(A), which states, "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy." R.R.'s cause of death was a gunshot wound to the head. Based on the manner of R.R.'s homicide, Nelson was also convicted of a firearm specification under R.C. 2941.145(A) and having weapons while under disability, in violation of R.C. 2923.13(A)(2)(B).

{¶40} Nelson argues the State did not present any physical evidence or eyewitness testimony linking him to the murder of R.R. The State presented only circumstantial evidence to the jury and asked them to infer that Nelson committed the murder of R.R. with the .380 Jimenez semiautomatic pistol.

{¶41} There was no DNA or fingerprint evidence connecting Nelson to the murder of R.R. While the interior of R.R.'s vehicle and the .380 Jimenez firearm were swabbed for DNA, there was insufficient material to include or exclude Nelson as a donor of the DNA samples recovered. Male DNA was recovered from the vehicle but was not identified as belonging to Nelson. The police were unable to test the .380 Jimenez for fingerprints because they swabbed the weapon for DNA. R.R.'s vehicle was dusted for fingerprints, but they were not usable.

{¶42} The evidence presented to the jury in this case was largely circumstantial. It is well-settled that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.* In this case, the circumstantial evidence presented to

the jury was sufficient to support the conviction of murder and the resulting conviction for the firearm specification and having weapons while under disability.

{¶43} R.R.'s mother testified that R.R. and Nelson had been in relationship for ten years. After R.R. purchased her home on Coventry Boulevard in 2019, Nelson was living with her in the home. A bag containing three boxes of .380 caliber bullets were found in R.R.'s bedroom. A .380 Jimenez semiautomatic firearm was found under the shed of R.R.'s home.

{¶44} Two witnesses testified that they saw R.R. and Nelson together at the Brick City Bar on March 7, 2020. A credit card receipt was presented that showed R.R. paid her bar bill at 1:57 a.m. After Nelson was asked to leave the bar, a witness saw R.R. and Nelson leave the Brick City Bar and get into R.R.'s vehicle. The witness saw that R.R. was driving and Nelson was in the passenger seat.

{¶45} Eighteen to 26 minutes after R.R. paid her bill at the Brick City Bar, R.R. was found dead in her vehicle between 3:15 a.m. and 3:23 a.m. on March 8, 2020. Daylight Savings Time started at 2:00 a.m. on March 7, 2020. The vehicle was stopped at the 2300 block of Harmont Avenue, which was approximately two miles or four to five minutes from the Brick City Bar and half-mile from R.R.'s home on Coventry Boulevard. The driver's side door was locked, but the passenger side door was unlocked. The police determined someone had been in the passenger seat of the vehicle because a green sock was found inside the vehicle and the matching green sock was found outside the passenger side of the vehicle. While Nelson was seen leaving the Brick City Bar with R.R., Nelson could not be located directly after R.R.'s murder and was days later found hiding in a bathroom shower.

{¶46} The evidence established that one bullet was shot from the inside R.R.'s vehicle and went through the windshield. A .380 caliber shell casing was found on the passenger side floorboard of R.R.'s vehicle that was determined to have been fired from the .380 Jimenez semiautomatic firearm found under the shed of R.R.'s home. The bullet retrieved from R.R.'s body was determined to have been shot from the .380 Jimenez semiautomatic firearm found under the shed of R.R.'s home. R.R.'s DNA was found on the sight of the .380 Jimenez.

{¶47} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Frye*, 5th Dist. Richland No. 17CA5, 2017-Ohio-7733, 2017 WL 4176953, ¶ 47 quoting *State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015–Ohio–3113, 41 N.E.3d 104, ¶ 61, citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶48} In this case, there was sufficient evidence to establish the elements of the murder with a firearm specification and having weapons while under disability. We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387. Upon our review of the entire record in this

matter, Nelson's convictions were not against the sufficiency or the manifest weight of the evidence.

{¶49} Nelson's first and second Assignments of Error are overruled.

### III. Appellate Sentence Review under R.C. 2953.08

{¶50} The jury convicted Nelson of violating R.C. 2903.02(A) and pursuant to R.C. 2903.02(A), "whoever violates [R.C. 2903.02(A)] is guilty of murder, and shall be punished as provided in section 2929.02 of the Revised Code." The trial court sentenced Nelson pursuant to R.C. 2929.02(B)(1), which states, "[e]xcept as otherwise provided in division (B)(2) or (3) of this section, whoever is convicted of or pleads guilty to murder in violation of section 2903.02 of the Revised Code shall be imprisoned for an indefinite term of fifteen years to life."

{¶51} When reviewing felony sentences on appeal, this Court is statutorily limited as to its consideration. R.C. 2953.08 governs appellate review of felony sentencing guidelines. In this specific case where Nelson was convicted of murder, the relevant statute as to appellate review states in pertinent part:

(A) In addition to any other right to appeal and except as provided in division

(D) of this section, a defendant who is convicted of or pleads guilty to a

felony may appeal as a matter of right the sentence imposed upon the

defendant on one of the following grounds:

* * *

(D)(3) A sentence imposed for aggravated murder or murder pursuant to

sections 2929.02 to 2929.06 of the Revised Code is not subject to review

under this section.

{¶52} In his third Assignment of Error, Nelson contends his prison sentence is unconstitutional because R.C. 2953.08(D)(3), which prohibits an intermediate level of appellate review of sentences imposed for murder and aggravated murder, violates the Eighth and Fourteenth Amendment to the United States Constitution. We note that at the time of the authoring of this Opinion, the issue concerning the constitutionality of R.C. 2953.08(D)(3) is currently before the Ohio Supreme Court in *State v. Grievous*, 157 Ohio St.3d 1502, 2019-Ohio-4768, 134 N.E.3d 1227 (discretionary appeal accepted). The Supreme Court held oral arguments on December 7, 2021.

{¶53} This Court analyzed our statutory authority under R.C. 2953.08(D)(3) to review a trial court's imposition of a life sentence without parole for the offense of aggravated murder in *State v. Weaver*, 2017-Ohio-4374, 93 N.E.3d 178 (5th Dist.), appeal not allowed, 151 Ohio St.3d 1510, 2018-Ohio-365, 90 N.E.3d 950. We first held that we were without statutory authority to review the sentence for aggravated murder:

> The Eighth District Court of Appeals has cogently stated: "The General Assembly's practice of treating sentencing for aggravated murder and murder convictions differently from other felonies is longstanding." *State v. Hollingsworth*, 143 Ohio App.3d 562, 569, 758 N.E.2d 713 (8th Dist. 2001). Furthermore, "[t]here is no constitutional right to appellate review of a criminal sentence, so 'the only right to appeal is the one provided by statute.'" *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, 2016 WL 6575297, ¶ 14, citing *State v. Akins*, 8th Dist. Cuyahoga No. 99478, 2013-Ohio-5023, 2013 WL 6021459, ¶ 11.

The Ohio Supreme Court has concluded that the pertinent language of R.C. 2953.08(D), *supra*, is unambiguous. *See State v. Porterfield*, 106 Ohio St.3d 5, 829 N.E.2d 690, 2005-Ohio-3095, ¶ 17. Thus, "[the language] '[a] sentence imposed for aggravated murder or murder pursuant to section 2929.02 to 2929.06 of the Revised Code is not subject to review under this section' clearly means what it says: such a sentence cannot be reviewed." *Id.* Likewise, in *State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647, 2013 WL 1777258, an appeal of an aggravated murder conviction, we reviewed the aforesaid statute and succinctly held as follows: "Pursuant to R.C. 2953.08(D)(3) and case law interpreting this statute, this Court is without statutory authority to review appellant's sentence on an evidentiary basis." *Id.* at ¶ 70.

(Footnote omitted). *State v. Weaver*, 2017-Ohio-4374, ¶ 18-19.

{¶54} We next held in *Weaver* that R.C. 2953.08(D)(3) did not violate the defendant's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *State v. Weaver*, 2017-Ohio-4347, ¶ 20. In *State v. Blair*, 4th Dist. Athens No. 18CA24, 2019-Ohio-2768, ¶ 42, the Fourth District Court of Appeals agreed with our conclusion that R.C. 2953.08(D)(3) survived the constitutional challenge predicated upon the Equal Protection Clause of the United States Constitution. *See also State v. Burke*, 2016-Ohio-8185, 69 N.E.3d 774 (2nd Dist.), *State v. Wilson*, 4th Dist. No. 16CA12, 2018-Ohio-2700; *State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185. The Seventh District noted in *State v. Austin* that "[b]oth the Second and Fourth Districts concluded that the severity of the crimes of murder and aggravated

murder provide a rational basis for the separate statutory scheme, and recognized that '[t]he General Assembly's practice of treating sentencing for aggravated murder and murder convictions differently from other felonies is longstanding.' *State v. Hollingsworth*, 143 Ohio App.3d 562, 569, 758 N.E.2d 713 (8th Dist. 2001)." *State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 68. Pursuant to our decision in *Weaver*, we find that R.C. 2953.08(D)(3) does not violate the Fourteenth Amendment.

{¶55} Nelson also contends that the Ohio and federal constitutional prohibitions against cruel and unusual punishment under the Eighth Amendment mandate appellate review of his sentence. Multiple appellate districts have determined that R.C. 2953.08(D)(3) is constitutional and does not constitute a violation of the Eighth Amendment. *State v. Grievous*, 12th Dist. Butler No. CA2018-05-093, 2019-Ohio-1932; *State v. Gardner*, 2022-Ohio-2725, 193 N.E.3d 1156 (12th Dist.); State v. Blair, 4th Dist. Athens No. 18CA24, 2019-Ohio-2768; *State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185; *State v. Thomas*, 11th Dist. Lake No. 2019-L-085, 2020-Ohio-4635. We reach the same conclusion as our sister districts and find that the absence of appellate review for Nelson's sentence does not violate the Eighth Amendment.

{¶56} Nelson's third Assignment of Error is overruled.

## CONCLUSION

{¶57} The judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.